IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| ETHAN BRODSKY, JEFFREY ROBB, and VALBONA ALLA, on behalf of themselves and all others similarly situated, | Civil Action No.: 15-cv-902 |
| *Plaintiffs*, | |
| v. | **CLASS ACTION COMPLAINT** |
| DELTA AIRLINES, INC., AMERICAN AIRLINES, INC., SOUTHWEST AIRLINES CO., and UNITED AIRLINES, INC. | **JURY TRIAL DEMANDED** |
| *Defendants.* | |

## CLASS ACTION COMPLAINT

Plaintiffs Ethan Brodsky, Jeffrey Robb, and Valbona Alla ("Plaintiffs"), by their attorneys, Ademi & O'Reilly, LLP, bring this civil antitrust action, individually and on behalf of a class of all those similarly situated, for treble damages under the antitrust laws of the United States against Defendants Delta Airlines, Inc.("Delta"), American Airlines, Inc. ("American"), Southwest Airlines Co. ("Southwest"), and United Airlines, Inc. ("United") (collectively "Defendants"). This action arises from Defendants' conspiracy to fix, raise, maintain, or stabilize prices of airline tickets through a number of mechanisms, including, *inter alia*, signaling one another how quickly they would add new flights, routes, and extra seats in order to limit the capacity, and limiting access to competitive fare information to keep the price of airfares artificially high.

# PARTIES

1. Ethan Brodsky is an individual who resides in the Western District of Wisconsin (Dane County).

2. On June 19, 2015, Plaintiff Ethan Brodsky flew from Lincoln, Nebraska to Minneapolis, Minnesota to Madison, Wisconsin on a ticket directly purchased from Defendant Delta.

3. On January 18, 2015, Plaintiff Ethan Brodsky flew from Dallas/Fort Worth to Chicago, IL (O'Hare) on a ticket directly purchased from Defendant American.

4. On May 21, 2012 Plaintiff Ethan Brodsky flew from Los Angeles to Chicago, IL (O'Hare) on a ticket directly purchased from Defendant United.

5. Plaintiff Ethan Brodsky directly purchased numerous other tickets from Defendants Delta, American, and United, traveling between Madison (WI), Minneapolis, Detroit, New York, Los Angeles, Dallas/Fort Worth, and Omaha, among many other locations.

6. Plaintiff Jeffrey Robb is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

7. On August 23, 2013 Plaintiff Jeffrey Robb directly purchased a ticket from AirTran for a round trip from Milwaukee, Wisconsin to Washington, D.C. AirTran is a former subsidiary of Defendant Southwest, with which it has now integrated.

8. On March 20, 2014 and March 21, 2014 Plaintiff Jeffrey Robb flew from Las Vegas, Nevada to Detroit, Michigan to Milwaukee, Wisconsin on a ticket directly purchased from Defendant Delta.

9. On September 25, 2014 and September 29, 2014 Plaintiff Jeffrey Robb flew round trip from Milwaukee, Wisconsin to Washington, D.C on a ticket directly purchased from Defendant Southwest.

10. Plaintiff Valbona Alla is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

11. On October 1, 2014 Plaintiff Valbona Alla directly purchased a ticket from Defendant Delta for a round trip from Milwaukee to New York City.

12. On February 26, 2015 and March 1, 2015, Plaintiff Valbona Alla flew round trip from Milwaukee to New York City on a ticket directly purchased from Defendant Southwest.

13. On May 14, 2015 Plaintiff Valbona Alla directly purchased a ticket from Defendant United Airlines, Inc. for a round trip from Milwaukee to Newark, New Jersey.

14. Defendant Delta is a Delaware corporation with its headquarters located in Atlanta, Georgia.

15. Defendant American is a Delaware corporation with its headquarters located in Fort Worth, Texas. It is a subsidiary of American Airlines Group Inc., also a Delaware Corporation with its headquarters located in Fort Worth, Texas.

16. Defendant Southwest is a Texas corporation with its headquarters located in Dallas, Texas.

17. Defendant United is a Delaware corporation with its headquarters located in Chicago, Illinois. It is a wholly-owned subsidiary of United Continental Holdings, Inc., a Delaware corporation with its headquarters located in Chicago, Illinois.

**JURISDICTION AND VENUE**

18. Plaintiffs' claim for injuries sustained by reason of Defendants' violations of Section 1 of the Sherman Act, 15 U.S.C. §1 are brought pursuant to Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, to obtain injunctive relief and to recover treble damages and the costs of this suit, including reasonable attorneys' fees.

19.     This Court has original federal question jurisdiction over the Sherman Act claim asserted in this Court, pursuant to 28 U.S.C. §§ 1331, 1337, and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26.

20.     Venue is proper in this judicial district pursuant to Sections 4(a) and 12 of the Clayton Act, 15 USC 15 and 22, and 28 USC 1391(b), (c), and (d), because during the Class Period one or more of the Defendants resided, transacted business, were found, or had agents in this district, and a substantial part of the events giving rise to Plaintiffs' claims occurred and a substantial portion of the affected interstate trade and commerce described below, has been carried out, in this district.

21.     Venue is also proper because Plaintiffs Alla and Robb reside in Milwaukee County.

## BACKGROUND

22.     This action challenges a collusion among major airlines to limit routes, information and available seats to keep airfares artificially high. Plaintiffs allege that Defendants illegally signaled to each other how quickly they would add new flights, routes, and extra seats. To keep prices high on fares, it was undesirable for the Defendants to increase capacity.

23.     On or around July 1, 2015, the Department of Justice confirmed that it was investigating potential unlawful coordination among the airlines. Department of Justice sent a letter to major US carriers, demanding copies of all communications the airlines had with each other, Wall Street analysts, and major shareholders about their plans for passenger-carrying capacity, or "the undesirability of your company or any other airline increasing capacity."

24.     Indeed, on July 1, 2015, Luke Punzenberger of United Airlines confirmed that they are being investigated by the Department of Justice.

25. From January 2010 to January 2014, capacity on domestic flights was virtually flat while the U.S. economy grew about 2.2 percent per year.

26. From January 2014 to January 2015, however, the airlines expanded by 5.5 percent, topping the economy's 2.4 percent growth for 2014.

27. As a result of a series of mergers starting in 2008, Defendants now control more than 80 percent of these seats in the domestic travel market. During that period, they have eliminated unprofitable flights, filled a higher percentage of seats on planes and made a very public effort to slow growth in order to command higher airfares.

28. As graphically depicted below, the average domestic airfare rose 13 percent from 2009 to 2014, when adjusted for inflation, according to the Bureau of Transportation Statistics.





5

29. In the past two years, U.S. airlines earned a combined $19.7 billion.

30. With suppression of routes, seats, and information, Defendants can make even higher profits, because at the same time there has been a massive drop in the price airlines pay for jet fuel, their single highest expense. In April 2015, U.S. airlines paid $1.94 per gallon, down 34 percent from the year before.



31. In the absence of collusion, cost savings in airfares due to decreased jet fuel costs should occur. Indeed, Senators Schumer and Blumenthal have called for an investigation due to the ticket price increases amidst fuel price decreases.

The International Air Transport Association

32. On June 11, 2015, the New York Times published an article titled "'Discipline' for Airlines, Pain for Fliers," in which one of Defendants' mechanisms for collusion was revealed, *i.e.*, industry conferences.

33. Defendants reinforced their commitment to the collusion – which they referred

to as "discipline" – through industry conferences, including the International Air Transport Association ("IATA") meetings.

34. "Discipline" is a euphemism for limiting flights and seats, higher prices and fatter profit margins.

35. In June 2015, the annual meeting of the world's top airline executives took place at the IATA conference in Miami.

36. At this meeting, Defendant Delta Airline's president, Ed Bastian, stated that Delta was "continuing with the discipline that the marketplace is expecting."

37. At this meeting, Air Canada's chief executive, Calin Rovinescu, stated, "People were undisciplined in the past, but they will be more disciplined this time."

38. At this meeting, Defendant American Airlines' chief, Dough Parker, stated that the airlines had learned their lessons from past price wars: "I think everybody in the industry understands that," he told Reuters.

39. This year, the "discipline" has been paying off; the IATA projected that airline industry profits would more than double in 2015 to nearly $30 billion – a record.

40. In May 2015, Defendant Southwest's chief executive, Gary C. Kelly, had considered breaking ranks and announced that Southwest was going to expand capacity in 2015 by as much as 8 percent, with the expansion spilling over into 2016.

41. However, after coming under fire at the IATA conference in June 2015, Mr. Kelly quickly changed his position, and stated "We have taken steps this week to begin pulling down our second half 2015 to manage our 2015 capacity growth, year-over-year, to approximately 7 percent."

42. The IATA meeting was an example of the industry conferences where

Defendants agreed to restrict capacity increases to keep ticket prices high.

43. Fiona Scott Morton, professor of economics at Yale and a former deputy attorney general in the antitrust division of the Justice Department commented, "When airline industry leaders say they're going to be 'disciplined,' they mean they don't want anyone to expand capacity. And when there aren't enough seats, airlines raise prices. That's what we've been seeing."

44. Peter Fitzpatrick, a spokesman for Air Canada, stated, "We are taking a disciplined approach to our business, not adding capacity in an attempt to simply expand market share but instead focusing on profitable growth."

## U.S. Senators' Call for Investigation

45. In December 2014, U.S. Senator Charles Schumer (D-N.Y.) called for a federal investigation of U.S. airlines amid falling gas prices.

46. Senator Schumer stated, "At a time when the cost of fuel is plummeting and profits are rising, it is curious and confounding that ticket prices are sky-high and defying economic gravity.….So I'm urging the feds to step in and do a price investigation on behalf of consumers who must buy holiday travel tickets that can break the bank."

47. In mid-June 2015, U.S. Senator Richard Blumenthal (D-Conn.) asked the Department of Justice to immediately investigate collusion and anti-competitive behavior amongst U.S. airline companies following a meeting of top executives at the IATA annual conference.

48. In his letter to Assistant Attorney General William Baer, Blumenthal cited the DOJ's investigation into the merger and the Department's initial complaint, which said, "The structure of the airline industry is already conducive to coordinated behavior… the

legacy airlines closely watch the pricing moves of their competitors. When one airline 'leads' a price increase, other airlines frequently respond by following with price increases of their own."

<u>Defendant Delta's Removal of Airfare Information from the Public Domain</u>

49. Defendant Delta has removed its schedule and fare information from over a dozen sites, including Trip Advisor Inc., Hipmunk Inc. and CheapOair.com.

50. This is part of a broader push by Defendants to restrict how– and whether– sites can use their fare and schedule data.

51. Fiona Scott Morton, a Yale University economics professor, wrote a Travel Technology Association study, said the airlines latest efforts are aimed at limiting fliers' ability to compare fares, rather than at lowering the carriers' costs.

52. Ms. Scott Morton stated, "The motivation behind the change isn't that 'I want low-cost distribution,' it is that 'I want to restrict the ability of the consumer to do price comparisons."

53. In her study, Ms. Scott Morton estimated that if fare-comparison sites do not have access to the biggest carriers' data, U.S. travelers would pay $6.7 billion more in airfare a year–equivalent to $30, or 11%, increase in the average fare.

## CLASS ACTION ALLEGATIONS

54. Plaintiffs bring this action as a class action under Rule 23(a), 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure. Plaintiffs seek to certify a class action under federal antitrust laws on behalf of:

> All persons and entities who purchased a ticket directly from any of the Defendants (excluding any Defendants, their employees, and their respective parents, subsidiaries and affiliates) (the "Class") from January 1, 2010 to present (the "Class Period").

55. Due to the nature of the trade or the commerce involved, Plaintiffs do not know the exact number of Class members involved, however, Plaintiffs believe that Class members are sufficiently numerous and geographically dispersed throughout the United States so that joinder of all Class members is impracticable.

56. Plaintiffs are members of the Class, Plaintiffs' claims are typical of the claims of the Class members, and Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs and Class members purchased tickets from Defendants at artificially maintained, supra-competitive prices established by the actions of the Defendants in connection with the restraint of trade alleged herein. Plaintiffs' interests are coincident with and not antagonistic to those of members of the Class.

57. Plaintiffs and their counsel will fairly and adequately protect the interests of absent Class members. There are no material conflicts between Plaintiff's claims and those of absent Class members that would make class certification inappropriate. Counsel for Plaintiff are experienced in complex class action litigation, including antitrust litigation, and will vigorously assert Plaintiff's claims and those of absent Class members. Fed. R. Civ. P. 23(a)(4).

58. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

59. The questions of law and fact common to the members of the Class predominate over any questions affecting only individual members, including legal and factual issues relating to liability, damages, and restitution. Among the questions of law and fact common to the Class are:

    a. Whether the Defendants and their co-conspirators colluded to fix, raise,

maintain, and/or stabilize the airfares in the United States;

b. whether Defendants violated Section 1 of the Sherman Act;

c. the duration of the conspiracy alleged in this Complaint

d. the nature and character of the acts performed by Defendants in furtherance of the conspiracy.

60. A class action is superior to other methods for the fair and efficient adjudication of this controversy. Treatment as a class action will permit a large number of similarly situated persons to adjudicate their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would engender. Class treatment will also permit the adjudication of claims by many Class members who could not individually afford to litigate an antitrust claim such as is asserted in this Complaint. This Class action likely presents no difficulties in management that would preclude maintenance as a class action. Finally, the Class is readily ascertainable.

61. The claims asserted herein are also appropriate for class certification under the laws of each of the states under which claims are asserted.

## COUNT ONE
### (Violation of Sections 1 and 3 of the Sherman Act)

62. Plaintiffs reallege and incorporate by reference all the above allegations as if fully set forth herein.

63. During Class Period, Defendants entered into a continuing combination or conspiracy to unreasonably restrain trade and commerce in violation of Sections 1 and 3 of the Sherman Act (15 U.S.C.§§ 1, 3) by artificially reducing or eliminating airfare competition in the United States.

64. In particular, Defendants have agreed, combined, and conspired to raise,

fix, maintain, or stabilize the prices of airfares in the United States.

65. As a result of Defendants' unlawful conduct, the airfares were raised, fixed, maintained and stabilized in the United States.

66. Defendants' combination or conspiracy consisted of a continuing agreement, understanding, and concerted action among Defendants.

67. Defendants' conspiracy had the effect of artificially inflating the airfares charged in the United States.

68. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and the other members of the Class paid more for airfares than they otherwise would have paid in the absence of Defendants' unlawful conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court enter judgment on their behalf and on behalf of the Class herein, adjudging and decreeing that:

A. This action may proceed as a class action, with Plaintiffs as the designated Class representatives and their counsel as Class Counsel;

B. Defendants have engaged in combination and conspiracy in violation of Section 1 of the Sherman Act (15 U.S.C. § 1), and Plaintiffs and the members of the Class have been injured in their business and property as a result of Defendants' violation;

C. Plaintiffs and the members of the Class recover damages sustained by them, as provided by the federal antitrust laws, and that a joint and several judgment in favor of Plaintiffs and the Class be entered against Defendants in an amount to be trebled in accordance with such laws;

D. Defendants, their subsidiaries, affiliates, successors, transferees, assignees and the respective officers, directors, partners, agents, and employees thereof and all other

persons acting or claiming to act on their behalf be permanently enjoined and restrained from continuing and maintaining the combination, conspiracy, or agreement alleged herein.

E. Plaintiffs and members of the Class be awarded pre-judgment and post-judgment interest, and that such interest be awarded at the highest legal rate from and after the date of service of the initial complaint in this action.

F. Plaintiffs and members of the Class recover their costs of this suit, including reasonable attorneys' fees as provided by law; and

G. Plaintiffs and members of the Class receive such other or further relief as may be just and proper.

H. That this Court award all such other and further relief as it may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, of all issues so triable in this case.

Dated: July 27, 2015

ADEMI & O'REILLY, LLP

By: Denise L. Morris_____
Guri Ademi (State Bar No. 1021729)
Shpetim Ademi (State Bar No. 1026973)
John D. Blythin (State Bar No. 1046105)
Mark A. Eldridge (State Bar No. 1089944)
Denise L. Morris (State Bar No. 1097911)
3620 Layton Avenue
Cudahy, Wisconsin 53110

Telephone: (414) 482-8000
Fax No.: (414) 482-8001

*Attorneys for Plaintiffs and the Class*